**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GERALD GESIORSKI, DAWN | : | |
| GESIORSKI, and LIL' BIT OF | : | |
| CHICAGO, INC., | : | |
| | : | |
| Plaintiffs, | : | No. 1:12-CV-449 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| BRANCH BANKING & TRUST | : | |
| COMPANY, f/n/a CARROLL | : | |
| COUNTY BANK & TRUST, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**June 6, 2012**

## I.    INTRODUCTION

Presently pending before the Court is the Motion to Dismiss (Doc. 13) of the

Defendant, Branch Banking & Trust Company, formerly known as Carroll County

Bank and Trust, ("BB&T"), filed April 20, 2012, seeking dismissal of the each

count of the Amended Complaint (Doc. 10) filed by the Plaintiffs, Gerald

Gesiorski, Dawn Gesiorski, and Lil' Bit of Chicago, collectively "Plaintiffs," on

April 3, 2012. The Motion has been fully briefed and is thus ripe for disposition.

For the reasons fully articulated herein, we will grant the Motion and dismiss the

Plaintiffs' Amended Complaint with prejudice.

## II.      STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by

a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it

must contain "sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937,

1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that

"raise a right to relief above the speculative level . . . ." *Victaulic Co. v. TIeman*,

499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Accordingly, to satisfy the plausibility standard, the complaint must indicate that

defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of

entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later

expounded upon and formalized in *Iqbal*, a district court must first identify all

factual allegations that constitute nothing more than "legal conclusions" or "naked

assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to

the assumption of truth" and must be disregarded for purposes of resolving a Rule

12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. Next, the district court must

identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual

3

allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III.   PROCEDURAL AND FACTUAL BACKGROUND

In accordance with the standard of review applicable to a Motion to Dismiss, the following facts are derived from the Plaintiffs' Amended Complaint (Doc. 10) and viewed in a light most favorable to the Plaintiffs.

Plaintiff Lil' Bit of Chicago, Inc., is a Pennsylvania business corporation with a principal business address at 20 McKinley Avenue in Hanover, York County, Pennsylvania (Doc. 10, ¶ 1). Plaintiffs Gerald and Dawn Gesiorski are adult residents of Pennsylvania identified in the Amended Complaint as husband and wife.[1] (*Id.* ¶ 2). Branch Banking and Trust Company ("BB&T") is a successor

---

[1] For ease of reference, where this memorandum references "Plaintiffs," we refer to all three Plaintiffs collectively. Where we reference solely the "Gesiorskis," as we often do in the within discussion of the Mortgage Satisfaction Act, a claim to which Plaintiff Lil' Bit of Chicago

in interest to Carroll County Bank and Trust and is a banking corporation with business offices in Maryland and in North Carolina. (*Id.* ¶ 3).

At all times relevant to this litigation, the Gesiorskis were tenants by the entireties of a parcel known as 894 Hershey Heights Road, Penn Township, York County, and several other properties identified in a mortgage. (*Id.* ¶ 5). The Gesiorskis' interest was subject to a mortgage lien given to BB&T, which was the first lien on the Hershey Heights parcel in addition to being the first lien on several of the Gesiorskis' other properties. (*Id.*). The mortgage lien secures a mortgage note which was executed contemporaneously. (*Id.*). It is dated December 23, 1992 and is recorded in York County. (*Id.*). Plaintiff Lil' Bit of Chicago guaranteed the mortgage note. (*Id.*).

Sometime thereafter, in approximately 1997, BB&T filed an action in assumpsit with confession of judgment against the Plaintiffs. (*Id.* ¶ 6). Plaintiffs each filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Middle District of Pennsylvania that same year. (*Id.*). During the pendency of the bankruptcy proceedings, BB&T entered into a forbearance agreement with the Gesiorskis. (*Id.* ¶ 7). Both bankruptcies were later dismissed by the Bankruptcy Court without discharging the BB&T mortgage debt. (*Id.*).

---

cannot be a party, we refer only to Plaintiffs Gerald and Dawn Gesiorski.

Thereafter, on July 8, 2003, BB&T filed a mortgage foreclosure action against the Gesiorskis; that action was docketed in the York County Court of Common Pleas at Docket No. 2003-SU-005092-10. (*Id.* ¶ 8). A hearing for assessment of damages was conducted on May 25, 2004, resulting in a damages assessment of $349,793.50. (*Id.* ¶¶ 8-9). Judgment for mortgage foreclosure was entered in the face amount of $351,793.50, together with interests and costs. (*Id.* ¶ 10). A sheriff sale was conducted on December 13, 2004, and BB&T was the successful bidder with a bid amount of $1,769.15. (*Id.* ¶¶ 11-12). BB&T's purchase thus created a deficiency which was not satisfied by the sale. (*Id.* ¶ 14). BB&T did not commence an action for deficiency judgment at any time after the sale. (*Id.* ¶ 16).

This action was commenced on November 29, 2007, in the Court of Common Pleas, York County, Pennsylvania, when Plaintiffs filed a Praecipe for Writ of Summons. (Doc. 1, Ex. 1). The writ was served on BB&T on February 14, 2008. (*Id.*). Thereafter, on December 1, 2009, counsel for the Plaintiffs made a written statutory demand upon BB&T to satisfy the outstanding judgments and mortgages. (Doc. 10, ¶ 18). On April 5, 2010, the Plaintiffs commenced an action in the York County Court of Common Pleas to have the mortgages and judgments marked satisfied and discharged. (*Id.* ¶ 20). On July 13, 2010, the parties stipulated

to an order in that matter which allowed either party to have the mortgages and judgments marked satisfied. (*Id.* ¶ 21).

On August 2, 2010, the Gesiorskis provided documentation to the Prothonotary of York County to have the judgments marked satisfied and paid the filing fees in connection therewith. (*Id.* ¶ 22). On October 20, 2010, the Gesiorskis likewise provided documentation and paid filing fees to the Recorder of Deeds of York County in connection with satisfaction of the mortgages. (*Id.* ¶ 23).

On February 17, 2012, Plaintiffs served a Complaint in the Court of Common Pleas of York County. (Doc. 1, Ex. 1). On March 12, 2012, Defendant BB&T removed the action to this Court by filing a Notice of Removal. (Doc. 1). On March 19, 2012, BB&T filed its first Motion to Dismiss (Doc. 3), which was mooted by and terminated after the filing of Plaintiffs' First Amended Complaint. (Doc. 10). In Counts I and IV, the Gesiorskis contend that the Defendant has failed to satisfy the mortgage within sixty (60) days of the presumptive receipt of all sums due and owing to it in violation of the Mortgage Satisfaction Act, 21 P.S. § 721-6(d). In Counts II, V, and VII, all Plaintiffs seek liquidated damages pursuant to 42 Pa.C.S. § 8104 for the Defendant's failure to satisfy the judgments within thirty (30) days as required. And in Counts III, VI, and VIII, all Plaintiffs seek an award of attorneys' fees for the Defendant's "vexatious" conduct pursuant to 42

7

Pa.C.S. § 2503(9) and 21 P.S. § 721-6(d).

On April 20, 2012, BB&T filed the instant Motion to Dismiss Plaintiffs'
Amended Complaint (Doc. 13), accompanied by a brief in support thereof. (Doc.
14). Plaintiffs filed a brief in opposition (Doc. 15) on May 3, 2012, and on May 21,
2012, BB&T filed a reply brief. (Doc. 16). Having now been fully briefed, the
Motion is ripe for our review.

## IV.   DISCUSSION

BB&T raises three arguments in support of its Motion to Dismiss. First, with
respect to Counts I and IV, BB&T contends that Plaintiffs' claims under the
Mortgage Satisfaction Act ("MSA") are time-barred by Pennsylvania's two-year
statute of limitations. Alternatively, BB&T argues that if these counts are not time-
barred, they nevertheless fail to state a meritorious claim. Finally, with respect to
Counts II, III, V, VI, VII, and VIII, seeking liquidated damages and attorneys' fees
for BB&T's failure to satisfy its judgment pursuant to 42 Pa.C.S. § 8104 ("Section
8104"), BB&T posits that these claims are expressly precluded as a matter of law
by both the language of Section 8104 and the MSA. We address each argument
*seriatim*.

### A.   Statute of Limitations

BB&T asserts that the Gesiorskis' claims under the MSA must be dismissed

as time-barred pursuant to Pennsylvania's two-year statute of limitations. The
Gesiorskis respond that Pennsylvania case law provides a six-year statute of
limitations, thus saving their claims. We agree with BB&T that the MSA claim is
governed by a two-year—not a six-year—statute of limitations; however, because
the Gesiorskis' claims were ultimately filed within two years of their unanswered
statutory demand for satisfaction, the MSA claims are nonetheless timely.

Plaintiffs contend that this issue falls squarely within the decision of the
Pennsylvania Supreme Court in *Pantuso Motors, Inc., v. CoreStates Bank N.A.*,
798 A.2d 1277 (Pa. 1999). They assert that *Pantuso Motors* provides that both the
MSA and Section 1984 actions are governed by a six (6) year statute of limitations
period. (Doc. 15, p. 3). However, the court's decision there addressed only the
limitations period applicable to Section 8104 actions for liquidated damages; the
decision did not involve any MSA claims and thus its limitations period was not at
issue. *Id.* at 1284. The *Pantuso Motors* court, after concluding that an action
seeking liquidated damages pursuant to Section 8104 is neither a contractual
dispute subject to Pennsylvania's four-year statute of limitations nor "an action
upon a statute for a civil penalty or forfeiture" governed by a two-year statute of
limitations, held that "the six-year residual statute applies . . . [to] Section 8104."
*Id.* at 1284.

9

Thus, it is clear that a six-year limitations period governs the Section 8104 claims before us, and Plaintiffs' claims thereunder in Counts II, III, V, VI, VII, and VIII, are timely as they were filed well within six years of the statutory demand for satisfaction. This much seems to be conceded by the Defendant, as its sole argument with respect to Section 8104, addressed *infra*, is that the Section 8104 claims are precluded by the MSA and the language of Section 8104.

We thus proceed to the Gesiorski's MSA claims. The MSA provides for a "Penalty for Failure to Satisfy," which imposes a civil "penalty" upon a mortgagee if the mortgagee fails, within sixty (60) days of receipt of the entire mortgage obligation and written request for satisfaction, to record satisfaction pieces in the office where the mortgage is recorded. 21 P.S. § 721-6(d). As BB&T asserts, correctly in our view and the view of at least one other district court addressing the issue, this language assesses a penalty which falls squarely within the two-year statute of limitations applicable to "an action upon a statute for a civil penalty." 42 Pa.C.S. 5524(5); *see also Campbell v. Bank of Am., N.A.*, 2006 U.S. Dist. LEXIS 77639, *5-6 (E.D. Pa. Oct. 25, 2006) ("Pennsylvania's two year statute of limitations . . . controls a plaintiff's claims under the [mortgage statute] for failure to satisfy a mortgage upon request."). The Gesiorskis argue otherwise but fail to cite any authority, other than a misplaced reliance on *Pantuso Motors*, supporting

10

such a conclusion. Accordingly, we find that the MSA claims in Counts I and IV seeking a penalty pursuant to 21 P.A. § 721-6(d)(1) are governed by § 5524's two-year statute of limitations.

We must next address, then, whether the MSA action is timely. As discussed in detail *infra* in our analysis of the merits of the Gesiorskis' MSA claims, the plain text of the penalty statute provides that the right to a penalty assessment arises sixty (60) days after (1) the mortgagee has received full payment of the mortgage obligation and (2) the mortgator sends a written request for satisfaction. *See* 21 P.S. § 721-6(d).

The Gesiorskis' contend that their right to satisfaction arose on June 13, 2005, and BB&T contends that this necessarily means that the limitations period expired on June 13, 2007. (Doc. 14, pp. 4-5). However, the statute is drafted in the conjunctive, and thus, assuming *arguendo* that this allegation suffices to satisfy the first element—and we conclude *infra* that it does not—the limitations period is nonetheless not triggered until both the first element, requiring payment, and the second element, requiring a statutory demand letter, are satisfied.

"Counsel for Gesiorski had made written demand upon [BB&T] to satisfy the outstanding judgment and mortgage on December 1, 2009." (Doc. 10, ¶ 18). Thus, the date the cause of action accrued for purposes of the two-year statute of

limitations is not the date where the mortgage was allegedly satisfied—June 13,

2005, according to the Gesiorskis—but instead, sixty (60) days from the date of the

Gesiorskis' first written request for satisfaction on December 1, 2009, which, by

this Court's calculations, was January 30, 2010. Thus, the two-year limitations

period on the Gesiorskis' MSA causes of action would not expire until January 30,

2012. The within action was commenced by the filing of a complaint on December

27, 2011, in the Court of Common Pleas of York County. Accordingly, the

Gesiorskis' MSA claims are timely.

### B.    The Mortgage Satisfaction Act

BB&T next contends that even if the Gesiorskis' claims are not time-barred,

and we have concluded that they are not, they nonetheless fail as a matter of law

for the failure of the Gesiorskis' to pay the entire mortgage obligation to BB&T.

Guided by the unambiguous language of the MSA, we agree and will dismiss the

Gesiorskis' claims in Counts I and IV.

The language of the MSA penalty provision provides as follows:

If, within 60 days of the mortgagee's receipt of:

(i) payment of the entire mortgage obligation and
all required satisfaction and recording costs; and

(ii) the first written request by the mortgagor for
the satisfaction piece delivered an in substantially
the form described in this section,

12

> the mortgagee fails to present for recording to the office
> where the mortgage was recorded a satisfaction piece as
> described in section 5 or the mortgage is not otherwise
> satisfied, the mortgagee shall forfeit and pay to the
> mortgagor a penalty in a sum not exceeding the original
> loan amount.

21 P.S. § 721-6(d)(1).

This language has been construed to require proof of the following elements:
(1) that the mortgagor has paid its entire mortgage obligation; (2) that the
mortgagor has requested the mortgagee to satisfy the mortgage; and (3) that the
mortgagee nonetheless failed to mark the mortgage satisfied within sixty (60) days
of the request. *O'Donoghue v. Laurel Sav. Ass'n*, 728 A.2d 914, 917 (Pa. 1999)
(reciting the factors test under the repealed version of the statute); *see Squires Golf
Club v. Bank of Am.*, 2010 U.S. Dist. LEXIS 71081, *6-7 (E.D. Pa. July 14, 2010)
(applying the *O'Donoghue* factor test to the new Mortgage Satisfaction Act).

The Gesiorskis admit the following facts: that BB&T obtained a mortgage
foreclosure and judgment for damages in the amount of $351,793.50 on August 6,
2004; that BB&T purchased the subject property at a sheriff sale on December 13,
2004, for $1,769.15; that the sale price paid at the sheriff sale was far less than the
amount owed to BB&T at the time of the sale, creating a massive, unsatisfied
deficiency; that BB&T, for whatever reason, did not commence a deficiency
judgment action against the Gesiorskis' for the deficiency; and that other than a

13

check for $282.00 provided to BB&T by counsel for the Gesiorskis' to cover

satisfaction filing fees, the Gesiorskis have not remitted payment to BB&T for the

remainder of their mortgage obligation. (Doc. 10, ¶¶ 9-18).

Based on these admissions, this Court cannot, by application of sound logic

and reason, independently fathom an instance where these facts—nonpayment,

default, and foreclosure—might satisfy the MSA's requirement of "payment of all

sums due and owing" to satisfy "the entire mortgage obligation." The Gesiorskis,

however, nonetheless reason that BB&T's very decision not to seek a judgment

against them, and thus not pursue full payment of the outstanding mortgage

obligation, constructively constitutes "payment of the entire mortgage obligation."

The Gesiorskis rely on Pennsylvania's deficiency judgment statute, which

provides that any debtor against whom a creditor does not seek a deficiency

judgment shall be deemed discharged "from all personal liability to the judgment

creditor on the debt, interest, and costs." 42 Pa.C.S. § 8103.  The Gesiorskis argue

that BB&T's failure to obtain a deficiency judgment, based on this language,

creates a rebuttable presumption of payment of the entire mortgage obligation by

estoppel, permitting the Gesiorskis to now seek a statutory penalty against BB&T.

In essence, the Gesiorskis submit that a mortgagor who has failed in his

mortgage obligations, lost the property at a foreclosure sale, and yet received the

benefit of relief from all payment obligations by operation of the deficiency

judgment act can then pivot off that windfall and benefit from the MSA by

contending that the lack of a deficiency judgment, in itself, constitutes a full

"payment of the entire mortgage obligation." In this Court's view, the Gesiorskis'

argument is nothing more than an attempt to game the MSA; they contend that on

top of relief from what would have been a massive deficiency obligation, they are

entitled to work another benefit in the form of an MSA penalty from the bank.[2] The

Gesiorskis lack of citation to any legal authority, binding or otherwise, further

underlines our conclusion that the argument is, at its best, entirely meritless.

The statute quite explicitly requires "payment of the entire mortgage

obligation" before its penalty provisions are triggered. It is an undisputed fact that

the Gesiorskis did not fulfill their mortgage obligation in the amount of several

hundred thousand dollars and were relieved of the same. Thus, we conclude that

the first element of the MSA's penalty provision is not met and Counts I and IV are

dismissed with prejudice.

## C.    Section 8104 Judgment Satisfaction

In Counts II, III, V, VI, VII, and VIII, Plaintiffs request the Court to award

---

[2] The Gesiorskis' argument recalls Mr. Bumble's line in Charles Dickens' *Oliver Twist*, wherein Bumble deemed a law "a (sic) ass—a idiot." Finding in favor of the Gesiorskis on their MSA claim might trigger the same sort of reaction.

liquidated damages and attorneys' fees as a result of BB&T's alleged willful and

unreasonable failure to satisfy the mortgage foreclosure judgment entered against

in a York County Court of Common Pleas case docketed at 2003-SU-005092-10.

(Doc. 10, ¶ 8). BB&T contends that, first, the request for liquidated damages is not

properly before this Court and, second, a claim under Section 8104 is precluded by

the exclusivity provision contained in the MSA.

     Title 42, Section 8104 of the Pennsylvania Consolidated Statutes, the section

which permits an award of liquidated damages in such circumstances, provides as

follows:

> (a) General rule.–A judgment creditor who has received
> satisfaction of any judgment in any tribunal of this
> Commonwealth shall, at the written request of the
> judgment debtor, or of anyone interested therein, and
> tender of the fee for entry of satisfaction, enter
> satisfaction in the office of the clerk of the court where
> such judgment is outstanding, which satisfaction shall
> forever discharge the judgment.
>
> (b) Liquidated damages.–A judgment creditor who shall
> willfully or unreasonably fail without good cause or
> refuse for more than 90 days after written notice in the
> manner prescribed by general rules to comply with a
> request pursuant to subsection (a) shall pay to the
> judgment debtor as liquidated damages 1% of the
> original amount of the judgment for each month of
> delinquency beyond such 90 days, but not less than $ 250
> nor more than $ 2,500. *Such liquidated damages shall be
> recoverable pursuant to general rules, by supplementary
> proceedings in the matter in which the judgment was*

16

*entered.*

42 Pa.C.S. § 8104 (emphasis added). Pursuant to section (b), we must conclude that the Plaintiffs' request for liquidated damages is simply not properly heard by this Court.

The plain language of Section 8104 states that such claims for liquidated damages "shall" be heard in the tribunal in which the original judgment was entered, thus creating a mandatory forum for the supplementary liquidated damages action. *See, e.g.*, *Dep't of Transp. v. McCafferty*, 758 A.2d 1155, 1165 n.13 (Pa. 2000) (the term "shall" is mandatory for statutory construction purposes when the statute is otherwise unambiguous). The Plaintiffs in their Amended Complaint clearly state that the judgment for which they sought satisfaction was entered in a mortgage foreclosure action docketed in the York County Court of Common Pleas at No. 2003-SU-005092-10. (Doc. 10, ¶ 8). Accordingly, and consistent with the plain text of Section 8104, that court, not this one, is the appropriate body to hear the Plaintiffs' liquidated damages arguments.[3]

---

[3] While not directly dispositive, the Pennsylvania Superior Court's decision in *Home S&L Co. v. Irongate Ventures*, 19 A.3d 1074, 1079-80 (Pa. Super. Ct. 2011) is instructive. In reviewing similar language in the deficiency judgment statute, requiring petitions to fix the fair market value to be filed "as a supplementary proceeding in the matter in which the judgment was entered," the court held that the trial court had no discretion to ignore the statute's mandatory language and permit transfer of, or otherwise consider, petitions to fix the fair market value improperly filed in a separate proceeding. The language of Section 8104 provides that liquidated damages "shall be recoverable pursuant to general rules, by supplementary proceedings in the

17

The plain language of Section 8104 limits the means of recovery of liquidated damages for failure to satisfy a judgment to a supplementary proceeding in the case in which that judgment was entered. Thus, Plaintiffs' claims for liquidated damages and attorneys' fees pursuant to Section 8104 may only be brought in the case in which the mortgage foreclosure judgment was entered, docketed at No. 2003-SU-005092-10 in the York County Court of Common Pleas. Accordingly, we will grant the Defendant's Motion to Dismiss and dismiss Counts II, III, V, VI, VII, and VIII with prejudice.

## V.    CONCLUSION

For the reasons fully articulated herein, the Defendant's Motion to Dismiss will be granted. An appropriate order shall issue.

---

matter in which the judgment was entered" and is thus sufficiently identical to warrant a like result. Indeed, the word "shall" in Section 8104 mandates such a result.